**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

KIMBERLY MCCULLOUGH STAFFORD                                    PLAINTIFF

v.                                    No. 2: 11CV00117 JLH-JJV

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                  DEFENDANT

**OPINION AND ORDER**

On December 27, 2007, Kimberly McCullough Stafford applied for disability income benefits and supplemental security income. Tr. 16 & 118. Stafford's applications were denied initially and on reconsideration. Tr. 56, 58-60. Stafford asked for a hearing before an ALJ. Tr. 72. Stafford, her husband, and a vocational expert testified at the hearing.

On June 4, 2010, the ALJ issued an unfavorable decision, concluding that Stafford was not disabled under the Social Security Act. Tr. 16. Stafford asked the Appeals Council to review the ALJ's decision. Tr. 6. The Appeals Council found no reason to change the ALJ's decision and denied Stafford's request. Tr. 1. The ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *See* 42 U.S.C. § 405(g). Stafford commenced this action on June 24, 2011, seeking judicial review of the Commissioner's decision.

**Scope of judicial review**. When reviewing a decision denying an application for disability benefits, the Court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner made a legal error. *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'");

*Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled."). Substantial evidence is more than a mere scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Slusser*, 557 F.3d at 925. In determining whether substantial evidence supports the Commissioner's decision, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports the decision, but the Court may not reverse the Commissioner's decision simply because substantial evidence supports a contrary decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

**The disability-determination process**. The Commissioner's regulations set forth a five-step process for evaluating disability claims. *See* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI).

> In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, he is not eligible for disability insurance benefits. In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). If the claimant's impairment meets or equals one of the listed impairments, he is entitled to benefits; if not, the ALJ proceeds to step four. At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability insurance benefits. If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits.

*McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (citations omitted). "The claimant bears the burden of proving disability. Having shown, however, that he is unable to perform his past relevant

work, the burden shifts to the [Commissioner] to show that work exists in the national economy that the claimant is capable of performing." *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).

**Stafford's work history and medical history**. Stafford was 41 years old when she allegedly became disabled.  For most of her adult life, Stafford was a housewife and mother.  She explained that her job as a cook at McDonald's was her only real job.  She started working  at McDonald's when her second husband (then live-in boyfriend) became disabled.  Tr. 256-57.  Stafford worked at McDonald's for two years beginning in June 2006, four hours per week, five days a week.  Tr. 153 & 140.  She testified that she stopped working because she could not handle standing up and because she was about to be let go.  Tr. 44.  By that time, Stafford's second husband—Johnny—received disability benefits.  Tr. 257.

Stafford was injured in a car accident at age 21.  The record contained no medical evidence about Stafford's treatment after the accident, but the record confirmed a remote left leg injury that left Stafford with a limp.  Tr. 222 (reporting on Feb. 7, 2005 as part of a mental examination that Stafford walked with a limp; one leg seemed to be turned in at the knee); *id*. at p. 164 (observing on Dec. 28, 2007 during an agency interview that Stafford walked with a limp and that her foot seemed to turn in); *id*. at p. 398 (reporting on Mar. 18, 2008, some lateral angulation of left knee about five to seven degrees, and the presence of an orthopedic implant for stabilization); *id*. at p. 408 (confirming, in June 2009, the presence of orthopedic screws traversing an old fracture in the distal diaphysis of the left tibia and a deformity of left tibia from previous fracture).

Stafford applied for disability benefits once before.  Tr. 45.  The Commissioner denied the applications on March 3, 2005.  Tr. 163.  Because Stafford did not appeal that decision, the earliest date Stafford could receive benefits was March 3, 2005, even though she maintained she became

disabled on September 22, 2004.

**The Commissioner's decision**.  At step one of the disability-determination process, the ALJ determined that although Stafford worked at McDonald's after her alleged on-set date, Stafford's work did not rise to the level of substantial gainful activity, and thus, Stafford had not engaged in substantial gainful activity since her alleged on-set date.  Tr. 18.  At step two, the ALJ determined Stafford's ability to work was impaired by borderline intelligence, chronic pain, and dysthymic disorder.  Tr. 18.  At step three, the ALJ found Stafford's impairments were severe, but did not meet or equal a listed impairment.  Tr. 19.  At step four, the ALJ determined Stafford had the RFC to perform sedentary work, except that she could not remember or understand detailed instructions and could not carry out detailed tasks.  Tr. 21.  At step five, the ALJ considered vocational-expert testimony and determined Stafford could make a successful adjustment to work that existed in the significant numbers in the national economy.  Tr. 27-28.  Thus, the ALJ concluded that Stafford was not disabled.  Tr. 28.

**Stafford's allegations of error**.  Stafford complained about two aspects of the Commissioner's decision: (1) the ALJ's consideration of listings 1.02, 1.03 and 1.04; and (2) the ALJ's evaluation of her credibility concerning her allegation of disabling pain.  Based on these complaints, Stafford maintained substantial evidence did not support the Commissioner's conclusion that she was not disabled.  She also maintained the Commissioner's decision did not comport with required legal standards.

Consideration of listings 1.02, 1.03 and 1.04.  Stafford attributed her alleged disability, in part, on her leg, her hip, and arthritis.  Tr. 167.  She complained that the ALJ failed to consider whether she met or equaled listings 1.02 (major dysfunction of a joint), 1.03 (reconstructive surgery or

surgical arthrodesis of a major weight-bearing joint), and 1.04 (disorders of the spine).  Stafford

suggested she was disabled because she met one of those listings.  Document #9, pp. 8-13.  She asked

the Court to remand this case for consideration of listings 1.02, 1.03, and 1.04.

> To qualify for disability under a listing, a claimant carries the burden of establishing
> that [her] condition meets or equals all specified medical criteria.  Merely being
> diagnosed with a condition named in a listing and meeting some of the criteria will not
> qualify a claimant for presumptive disability under the listing. "An impairment that
> manifests only some of [the listing] criteria, no matter how severely, does not qualify."

*McCoy v. Astrue*, 648 F.3d 605, 611-12 (8th Cir. 2011) (citations omitted).

To meet listing 1.02 based on the hip, knee, or ankle, a claimant must have a "gross

anatomical deformity…and chronic joint pain and stiffness with signs of limitation of motion or other

abnormal motion of the affected joint(s), and…joint space narrowing, bony destruction, or ankylosis

of the affected joint(s) [and i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee,

or ankle), resulting in inability to ambulate effectively…." 20 C.F.R. pt. 404, subpt. P., app. 1, listing

1.02.  The Commissioner ordered a consultative examination and testing to determine Stafford's

physical impairments.  Tr. 393.  The examiner observed some lateral angulation of the left knee—by

about five to seven degrees—and some limitation motion in Stafford's knees and ankles.  Tr. 396.

Usually, a person can well tolerate angulation of up to 12 to 14 degrees.  *See* Sam Wiesel, M.D. &

Barbara Robb, 2-7 Atty's Textbook of Med. 7.17(12) (3d).  Although angulation is consistent with

anatomical deformity, no evidence showed Stafford could not ambulate effectively.

"Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an

impairment(s) that interferes very seriously with the individual's ability to independently initiate,

sustain, or complete activities."  20 C.F.R. pt. 404, subpt. P., app. 1, listing 1.03.  Generally,

"ineffective ambulation" means "having insufficient lower extremity functioning . . . to permit

independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id*. One health care provider observed that Stafford had difficulty ambulating. Tr. 395 (observing on March 18, 2008 that Stafford used the clinic furniture and walls for ambulatory assistance). Another reported that Stafford could ambulate independently. Tr. 415 (reporting on June 29, 2009 that Stafford could ambulate independently). No provider observed the use of an assistive device. Evidence of angulation of the left knee indicated Stafford had difficulty walking, but walking with difficulty or with a limp is not enough to meet the listing.

Stafford experienced pain in her knees, but no evidence showed she could not ambulate effectively. The consultative examiner reported that Stafford experienced pain in both knees, but Xrays revealed only mild osteoarthritic degenerative changes in the right knee and minimal degenerative changes in left knee. Tr. 254. To the extent that Stafford contended that she met listing 1.02 based on her knees, she did not met the listing because the Xrays showed only mild arthritis in the right knee. To the extent that Stafford contended that she met the listing based on her hips, a March 2011 CT scan of Stafford's hip revealed no evidence of avascular necrosis of the left hip. Tr. 423. (The presence of avascular necrosis of the femoral head can cause musculoskeletal disability.) The ALJ did not err as to listing 1.02. Neither did the ALJ err in regard to listing 1.03 because that listing also requires the inability to ambulate effectively.

Meeting listing 1.04 required proof of a spinal disorder that compromised a nerve root and evidence of nerve root compression "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . ." 20 C.F.R. pt. 404, subpt. P., app. 1, listing 1.04A.

Meeting listing 1.04 required proof by medically acceptable imaging.  20 C.F.R. pt. 404, subpt. P., app. 1, listing 1.00C13.  The medically acceptance imaging in this case was a March 2011 CT of Stafford's lumbar spine.  The CT scan showed a mild diffuse disc bulge at L3-4, displacing the exiting L3 nerve root; mild diffuse disc bulges at L4-5 and L5-S1; and moderate left lateral recess narrowing with possible mass effect on the passing left L4 nerve root.  Tr.  420-25.  This evidence was consistent with compromise of a nerve root, but the record included no evidence of atrophy with associated muscle weakness or muscle weakness, sensory or reflex loss, or a positive straight-leg raising test.  Instead, the consultative examiner found no sensory, motor or reflex deficits, and reported that grip strength testing was 5/5.  Tr. 397.  Thus, Stafford did not meet the requirements for listing 10.4.  The ALJ did not err.

The ALJ's evaluation of Stafford's allegation of disabling pain.  Stafford testified that she could not work because she was in too much pain. Tr. 49.  "Pain is a nonexertional impairment," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), that must be considered in determining a claimant's RFC.  Stafford complained that the ALJ failed to consider her pain in determining her RFC.  Document #9, pp. 13-20.  Stafford's complaint challenged the ALJ's evaluation of her credibility and the ALJ's determination about her RFC.

The ALJ must "determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations."  *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001).  Before determining a claimant's RFC, "the ALJ must determine the [claimant's] credibility, as [her] subjective complaints play a role in assessing [her] RFC."  *Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).  "In assessing a claimant's credibility, an ALJ must consider all of the evidence related to the subjective

complaints, the claimant's daily activities, observations of third parties, and the reports of treating and examining physicians." *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ's consideration of these matters in this case was thorough, well-reasoned and supported by the record.

The ALJ discussed Stafford's testimony about her pain and her daily activities. Tr. 20. The ALJ reported that Stafford's husband agreed with Stafford's testimony. Tr. 22. The ALJ detailed the medical evidence and explained why the evidence did not support Stafford's allegations about the severity of her pain. Tr. 22-26. The ALJ concluded that "even though the claimant does have medically determinable impairments, none are severe enough to prevent the claimant from participating in substantial gainful activity, given the," Tr. 26, RFC determination. The ALJ reasoned that although Stafford suffered from chronic pain, "limiting her to sedentary work should reasonably be expected to limit aggravating pain." Tr. 26.

Substantial evidence supported the ALJ's conclusion that, although Stafford testified that her legs and hips prevented her from going back to work, Tr. 45, medical evidence did not substantiate the alleged degree of impairment. Moreover, the ALJ limited Stafford to sedentary work. It was not until the ALJ asked whether she could manage a job that would allow her to sit during the course of the work day that Stafford stated that she could not sit for a long period of time. Tr. 47. At the outset of the application process, an agency interviewer observed that Stafford changed sitting positions due to pain in her leg, Tr. 164, but no medical evidence suggested problems with sitting. Stafford consistently maintained that she was unable to work because she could not stand for very long, not because she could not sit. *See* Tr. 167 (reporting on Dec. 28, 2007 that her leg and hip won't let her stand or walk much); *id*. at p. 151 (writing on Jan. 8, 2006 that she never worked much

because of her leg); *id*. at p. 394 (telling the consultative examiner on Mar 18, 2008 that she stopped working as a cook because she could not tolerate the amount of standing that was required); *id*. at p. 256 (telling a consultative examiner on May 10, 2008 that she stopped working at McDonald's because she couldn't stand on her feet long enough); *id*. at p. 186 (stating on June 30, 2008 that she cannot walk long); *id*. at p. 44 (testifying on Jan. 21, 2010 that she quit working because she couldn't handle standing up).   To the extent pain limited Stafford's ability to work, the ALJ's RFC determination accounted for pain.   To the extent Stafford complained about squatting, stooping, bending, standing, climbing, and lifting, Document #9, p. 19, sedentary work accommodated any limitation.   The ALJ did not err.

**Conclusion**.   Having determined substantial evidence supported the Commissioner's denial of Stafford's applications for disability benefits, and the Commissioner made no legal error, the Court DENIES Stafford's request for relief (Document #2) and AFFIRMS the Commissioner's decision.

IT IS SO ORDERED this 3rd day of July, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE